IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


KENNETH WAYNE LEAMING                                                    PLAINTIFF

       v.                                        Civil No. 12-5114

SHERIFF TIM HELDER                                                       DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the United States Penitentiary in Marion, Illinois.  The events that are the subject of this case occurred while Plaintiff was incarcerated in the Washington County Detention Center (WCDC) in Fayetteville, Arkansas.  Plaintiff maintains his constitutional rights were violated in the following ways: (1) he was imprisoned under a fictitious name and not told the reason for his imprisonment; (2) he was denied adequate medical care; and (3) he was denied access to a law library.

Defendant has filed a motion for summary judgment (Doc. 103).[1]  Plaintiff has responded to the motion by completing a questionnaire (Doc. 119) and Defendant filed a reply brief (Doc. 121).

### 1.  Background

Officers of the Washington County Sheriff's Department transported Plaintiff from Oklahoma to Arkansas.  Doc. 105-1, Defendant's Exhibit (hereinafter Deft's Ex.) A at pgs. 24 & 27-

---

[1]Defendant has supported his motion with the unsigned deposition of the Plaintiff.  Plaintiff objects to its consideration on the grounds he did not sign it.  However, Plaintiff does not deny that the transcript accurately reflects his sworn testimony and points to no inaccuracies in the deposition transcript.  The deposition will be considered by the Court.  See e.g., In re Sunset Bay Associates, 944 F.2d 1503, 1509-1510 (9th Cir. 1991)(unsigned deposition could be used to support a summary judgment motion if the deponent was sworn and responded to questions based on his personal knowledge).

28[2]; Doc. 119, Plaintiff's Response (hereinafter Resp.) at ¶ 5(A).   Plaintiff was booked into the WCDC on June 7, 2012, and remained incarcerated there until July 12, 2012.   Response at ¶ 1.   He was being held for the United States Marshal Service (USMS).   Id. at ¶ 8(A).   However, he maintains that he was not told what charges he was being held on.   Id. at ¶¶ 8(A) & 8(B).   There is no indication he ever contacted the USMS to determine why he was being held.

Plaintiff maintains he was being held under a fictitious name: Kenneth Wayne Leaming and a property registration number.   Resp. at ¶¶ 2, ¶ 5(A), 8(C).   Plaintiff indicates his name is: "Kenneth-Wayne; Leaming."   Resp. at ¶ 8(C).   Plaintiff also maintains the Court docket contains a fictitious name.   He maintains his name should not be written in all capital letters and it should be on the docket as: Kenneth-Wayne; Leaming.   Resp. at ¶¶ 8(D) & 8(E).   See also Defts' Ex. A at pg. 25.

During his incarceration, Plaintiff never personally met or spoke with the Defendant.   Resp. at ¶ 4.   However, Plaintiff maintains that as Defendant was a "FIDUCIARY," that speaking with a deputy was "as if he were personally present and acting himself."   Id.

Plaintiff maintains he had problems getting his heart medications at the WCDC.   When he was transported, Plaintiff indicates he brought with him Furosemide,[3] Potassium, Metoprolol,[4] and

---

[2] Page references are to the pages of the deposition and not to the pages of the document number.

[3] This medication is a "water pill" used to reduce the swelling and fluid retention caused by various medical problems. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682858.html (accessed January 29, 2015).

[4] This medication is used to treat high blood pressure.   http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682864.html (accessed January 29, 2015).

Lisinopril.[5]  Resp. at ¶ 5(A).  In his deposition, Plaintiff states he was also on Hydrochlorothiazide.[6]

Defts' Ex. A at pg. 31.  He indicates his medication was transported with him to the WCDC, at

which time it was taken away from him.  Resp. at ¶ 5(A).  Plaintiff indicates he told booking

personnel that he would need his medication.  Id. at ¶ 5(B).

Plaintiff had his medication on the evening of June 6, 2012, the evening before his transport.

Id.  He had been taking this medication for approximately two years.  Resp. at ¶ 5(D).  In the late

afternoon or early evening of June 8th, Plaintiff began experiencing cramps and says he collapsed

near the door of his cell.  Resp. at ¶ 5(F); Defts' Ex. A at pg. 33.   Plaintiff believes the cramps were

due to depleted Potassium.  Resp. at ¶ 5(G).  Despite his cramps, Plaintiff was made to walk,

stumble, or fall to the medical office.  Id.  Once there, he was given Potassium by a nurse.  Id.  His

cramps stopped shortly after he received the medication.  Id.  His cramps lasted a total of three to

four hours.  Id.  The following day, Plaintiff began receiving his medication.  Id. at ¶ 6.  However,

he indicates he was only given one dose a day of Metoprolol instead of the two times per day as it

was prescribed.  Id.

With respect to the medication he was given, Plaintiff states he did not have access to drug

information to verify that the medication he was being given was "correct, or even medication."

Resp. at ¶ 7.  He indicates some of the medication looked different from the medication he had

previously taken.  Id.

---

[5]This medication is used to treat high blood pressure and to improve survival after a heart attack.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a692051.html (accessed January 29, 2015).

[6]This medication is used to treat high blood pressure and also to treat edema.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682571.html (accessed January 29, 2015).

Plaintiff indicates he continued to get his medication "for the most part" during the remainder of his incarceration. Defts' Ex. A at pg. 33. There were a couple of times when "they ran out of one or more medications and [he] missed a day or two." Id.

Plaintiff maintains he made repeated requests for access to a law library or specific legal materials in writing. Resp. at ¶ 9. All requests were refused. Id. He indicates he had no access to any legal materials during his incarceration at the WCDC. Id. Plaintiff did not miss any court deadlines, but he maintains that his bifurcated habeas corpus issue in this case was delayed. Id. Plaintiff indicates he had previously studied the law, including extensive private tutoring and studies. Id. at ¶ 10.

Plaintiff filed this case on June 15, 2012, while incarcerated at the WCDC. Doc. 1. Between June 15th and July 12th, when he was transferred from the WCDC, he filed an amended complaint and twelve separate motions. Docs. 3-16.

In his response to the summary judgment motion, when Plaintiff was asked whether he had been subjected to unconstitutional conditions of confinement, he responded yes. Resp. at ¶ 11(A). However, when asked to describe in detail the unconstitutional conditions and how he was harmed by them, Plaintiff merely referred to his inability to access legal materials and the delay it caused in pursing his bifurcated habeas corpus action. Id.

When asked if he contended a custom or policy of Washington County was the moving force behind the violation of his constitutional rights, Plaintiff crossed out the words Washington County and wrote in "'Tim Helder,' FIDUCIARY." Resp. at ¶ 12. He then stated that Defendant, acting through his deputies, had a policy of withholding prescribed medications, denying access to legal

materials, and of engaging in the trafficking of people as property through the use of fictitious names and property registration numbers.  Id.; see also Defts' Ex. A at pg. 46.

### 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendant has moved for summary judgment on all claims.  Defendant makes the following arguments: (1) no claim of constitutional dimension is stated by Plaintiff's assertion he was held under a fictitious name, a property number, and not told the reason he was being held; (2) no deliberate indifference to Plaintiff's medical care was shown and Defendant was not personally

involved in Plaintiff's medical treatment; (3) Plaintiff's denial of access to the courts claim fails because he suffered no actual injury; (4) there is no basis on which he can be held liable in his personal capacity; (5) there is no basis on which he can be held liable in his official capacity; and (6) Plaintiff's transfer mooted his requests for injunctive relief.

**(A).  Bifurcated Habeas Corpus Claim**

Plaintiff maintains he has a bifurcated habeas corpus claim in this case.  Plaintiff may not use the civil rights statutes as a substitute for *habeas corpus* relief.  In other words, he cannot seek declaratory or injunctive relief relating to his confinement and/or conviction.  See e.g., Edwards v. Balisok, 520 U.S. 641, 648 (1997); Heck v. Humphrey, 512 U.S. 477, 483-89 (1994); Preiser v. Rodriquez, 411 U.S. 475, 500 (1973)(habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement).

**(B).  Fictitious Name, Property Number, and Reason for Incarceration**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  West v. Atkins, 487 U.S. 42 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

There is no constitutional right to have your name capitalized or punctuated in an atypical or specific way.  Nor does a detention center violate the constitution when it assigns a detainee a number.  See e.g., Spies v. Voinovich, 173 F.3d 398, 406 (6th Cir. 1999)("[I]t is established . . . that

[a prisoner] has no constitutional right to dictate how prison officials keep their prison records.")
(internal quotation marks and citation omitted). Finally, Plaintiff was advised why he was being held
at the WCDC. He was told that he was being held for another agency, the United States Marshal
Service.

**(C). Medical Care**

"[W]hen the State takes a person into its custody and holds him there against his will, the
Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and
general well-being." County of Sacramento v. Lewis, 523 U.S. 833 (1998)(citation omitted). The
Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See
Farmer v. Brennan, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel
and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment prohibits punishments
that deprive inmates of the minimal civilized measure of life's necessities." Smith v. Copeland, 87
F.3d 265, 268 (8th Cir. 1996). Jail officials must provide reasonably adequate ventilation, sanitation,
bedding, hygienic materials, food, utilities, safety and medical care. Id.

In the medical care context, Plaintiff must prove that the Defendant acted with deliberate
indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The
deliberate indifference standard includes "both an objective and a subjective component: 'The
[plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2)
that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v.
Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239

(8th Cir.1997)).  Plaintiff's claim in this case centers on the delay in his receipt of his prescription medications.

Liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action.  See e.g., Ripson v. Alles, 21 F.3d 805, 808-09 (8th Cir. 1994).  The named Defendant was not personally involved in booking the Plaintiff, in handling his prescription medication, or in determining when it should be distributed.  There is no indication the named Defendant was consulted about the Plaintiff's medication needs or was even aware of the fact that Plaintiff had prescription medication that he needed.  See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).   General responsibility for supervising the jail is insufficient to establish personal involvement.  Reynolds v. Dormire, 636 F.3d 976, 981 (8th Cir. 2011).  In short, there is simply no basis on which the named Defendant could be held liable.

Moreover, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis."  Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted).   Plaintiff has presented no evidence that any delay in treatment adversely impacted his prognosis.

**(D).  Law Library**

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system."

Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996)(citing, Lewis v. Casey, 518 U.S. 343 (1996);

Bounds v. Smith, 430 U.S. 817, 821 (1977)).   In Myers, the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal
> materials or to legal assistance so that inmates can prepare and pursue complaints,
> and with some ability to mail these complaints and related legal correspondence once
> prepared. Inmates do not have a right, however, either to law libraries or to unlimited
> stamp allowances for legal mail.   Instead, the duty to make such arrangements is
> bounded by the inmates' right of meaningful access to the courts.  To state a claim
> that a law library or legal assistance program violates this right, inmates must assert
> that they suffered an actual injury to pending or contemplated legal claims.  Alleging
> theoretical inadequacies is insufficient. Inmates must instead show, for example, that
> a complaint that they prepared was dismissed due to a technical requirement that a
> library's inadequacies prevented them from knowing, or that a library was so
> inadequate that it prevented them from filing a complaint for actionable harm at all.

Myers, 101 F.3d at 544 (citations omitted).

In Cody v. Weber, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme

Court in Lewis v. Casey, 518 U.S. 343 (1996) and Bounds v. Smith, 430 U.S. 817 (1977),

"determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that

directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's

confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once

in court.'"  Cody, 256 F. 3d at 767-68 (quoting Lewis, 518 U.S. at 354-55).

In this case, Plaintiff's denial of access to the courts claim fails because he has suffered no

actual injury.  Plaintiff was able to file this civil rights action while incarcerated at the WCDC and

has missed no deadlines imposed by the Court.  He was incarcerated in the WCDC for a short period

of time--June 7th to July 12th--during which time he filed numerous documents with this Court.

See e.g. Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). Although "[p]ro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law," United States v. Knox, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351. As he suffered no actual injury, this claim fails.

### (E). Official Capacity Claims

Finally, with respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Washington County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Washington County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir.2002);

> *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir.2007).

Id. at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whiteledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Plaintiff has failed to do so.

In Johnson v. Douglas County Medical Dept., 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. It stated:

> To establish a claim for "custom" liability, [Plaintiff] must demonstrate:
>
> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Id., 725 F.3d at 828 (citations omitted).

Plaintiff's allegations in this case do not suggest the existence of any unconstitutional policy or custom of Washington County.

-11-

**(F).  Injunctive Relief**

Defendant correctly argues that any claims for injunctive relief are moot.  Plaintiff is no longer incarcerated at the WCDC and that renders any claims for injunctive relief moot.  See e.g., Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. (1999)(transfer to another facility moots any claims for injunctive relief).

**4.  Conclusion**

For the reasons stated above, I recommend that Defendant's motion for summary judgment (Doc. 103) be granted and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of February 2015.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE